[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-10366

_____

TROY OLHAUSEN,

Plaintiff-Appellant,

*versus*

ARRIVA MEDICAL, LLC,
ALERE, INC.,
AMERICAN MEDICAL SUPPLIES, INC.,
ABBOTT LABORATORIES, INC.,

Defendants-Appellees.

2                    Opinion of the Court                    21-10366

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-20190-RNS

_____

Before WILSON and ROSENBAUM, Circuit Judges, and COVINGTON,[*]
District Judge.

PER CURIAM:

Troy Olhausen appeals from the dismissal of his False Claims Act ("FCA") action against Arriva Medical, LLC ("Arriva"), Alere, Inc. ("Alere"), American Medical Supplies, Inc., and Abbott Laboratories, Inc. ("Abbott") (collectively, "Defendants"). Because dismissal was appropriate, we affirm.

## BACKGROUND

Arriva was a Florida provider of mail-order diabetic testing supplies and other medical products. Olhausen was Arriva's Senior Vice President of Business Development and Marketing. In 2011, Alere acquired Arriva. In 2013, the Centers for Medicare and Medicaid Services ("CMS") awarded Arriva a Durable Medical Equipment, Prosthetics/Orthotics and Supplies ("DMEPOS") competitive bidding contract to provide Medicare beneficiaries with mail-

_____

[*] The Honorable Virginia Covington, United States District Judge for the Middle District of Florida, sitting by designation.

order diabetic supplies.  In 2017, Abbott acquired Alere, and closed Arriva soon after.

According to Olhausen's second amended complaint, Arriva violated a number of Medicare rules in the course of furnishing supplies to its patients.  As relevant here, Olhausen alleged that Arriva provided mail-order diabetic testing supplies without obtaining required Assignment of Benefit forms from patients.  Olhausen also alleged that Arriva violated Medicare rules and the terms of its competitive-bid contract when it failed to disclose or accredit its Tennessee, Arizona, and Philippines call-center locations.  Finally, he alleged that Arriva conspired with its parent companies, Alere and Abbott to submit false Medicare claims based on regulatory violations alleged in the other Counts.

The district court granted the Defendants' motion to dismiss on the grounds that Olhausen failed to sufficiently plead his claims.

## STANDARD OF REVIEW

"We review a dismissal with prejudice for failure to state a claim under the False Claims Act de novo." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (citing *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir.2009)).  "In doing so, we accept the allegations in the complaint as true and construe them along with the reasonable inferences therefrom in the relator's favor." *Id.* (citing *McNutt v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir.2005)).

## DISCUSSION

To prevail on his FCA claims, Olhausen must prove: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. v. Mortg. Inv'rs Corp.*, 987 F.3d 1340, 1346 (11th Cir. 2021), *cert. denied sub nom. Mortg. Inv'rs Corp. v. United States ex rel. Bibby*, 141 S. Ct. 2632 (2021). We assume without deciding that Olhausen's second amended complaint pled with sufficient particularity that the Defendants submitted false statements to the government. We nonetheless affirm because we hold that Olhausen has failed to allege the element of scienter as a matter of law.[1]

Under the FCA, a person acts with the requisite scienter when she "knowingly" submits a false claim, which the FCA defines as either "actual knowledge," "deliberate ignorance," or "reckless disregard." *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1155 (11th Cir. 2017) (citing 31 U.S.C. § 3729(b)). The FCA's scienter requirement is "rigorous." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016). It ensures that FCA liability "does not reach an innocent, good-faith mistake about the meaning of an applicable rule or regulation," nor does it reach "claims made based on reasonable but erroneous interpretations of a defendant's legal obligations."

---

[1] We may affirm on any ground that finds support in the record. *Long v. Comm'r*, 772 F.3d 670, 675 (11th Cir. 2014). Moreover, the parties have fully briefed the scienter issue.

*United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287–88 (D.C. Cir. 2015) (internal quotation marks omitted).  Where "the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007).  And the analysis of whether an interpretation of ambiguous law is reasonable is an objective one.  *Id.* at 69–70.

The Medicare rules that Olhausen alleged the Defendants violated are susceptible to multiple reasonable interpretations.  As for Olhausen's allegations regarding signatures, because Arriva had a Medicare contract, it was considered a "participating supplier." 42 C.F.R. § 400.202.  Generally, "Medicare pays the supplier for covered services if the beneficiary . . . assigns the claim to the supplier and the supplier accepts the assignment." *Id.* § 424.55(a).  But "when payment is for services furnished by a *participating physician or supplier*, the beneficiary . . . *is not required* to assign the claim to the supplier in order for an assignment to be effective." *Id.* §424.55(c) (emphases added).  And if a supplier "files a claim for services that involved no personal contact between the . . . supplier and the beneficiary . . . a representative of the . . . supplier may sign the claim on the beneficiary's behalf." *Id.* § 424.36(c).

Arriva concludes from these rules that it was not required to obtain beneficiary signatures for every assignment of benefits, including for assignments for products not covered by its DMEPOS

contract, such as heating pads, orthotic braces, and vacuum-therapy pumps. Even if Arriva's interpretation is wrong (and it was required to obtain signatures), Olhausen cannot show that Arriva had the requisite scienter because it is an objectively reasonable interpretation of the rules to conclude that the signatures were not required. *See, e.g.*, *U.S. ex rel. Hixson v. Health Mgmt. Sys., Inc.*, 613 F.3d 1186, 1190 (8th Cir. 2010) ("[A] statement that a defendant makes based on a reasonable interpretation of a statute cannot support a claim under the FCA if there is no authoritative contrary interpretation of that statute.").

The same is true regarding the call-center locations allegations. Medicare regulations require a supplier to "enroll separate physical locations it uses to furnish Medicare-covered DMEPOS, with the exception of locations that it uses solely as warehouses or repair facilities." 42 C.F.R. §424.57(b)(1). The term "furnish" is not defined. It is an objectively reasonable interpretation of the rule that Arriva's call-center locations did not "furnish" DMEPOS, so it was not required to enroll them. Again, even if this interpretation is incorrect, that objectively reasonable conclusion by Arriva negates the scienter element.

And for these same reasons, Olhausen also failed to plead the requisite scienter for Arriva and its parent companies to have conspired to violate the FCA.

**AFFIRMED.**