[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
September 9, 2005
**THOMAS  K. KAHN**
**CLERK**

_____

No. 04-14458

_____

D. C. Docket No. 01-03156-CV-AR-J

BRENT MCNUTT,
for the use and benefit of United States of
America ex rel,

Plaintiff-Appellee,

versus

HALEYVILLE MEDICAL SUPPLIES, INC.,
CITY PHARMACY OF HALEYVILLE,
CARE MEDICAL OF JASPER, INC.,
CARE PHARMACY, INC.,
WINFIELD MEDICAL SUPPLY, INC.,
GERALD MAX BURLESON,
FRANCES R. BURLESON,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(September 9, 2005)**

Before CARNES and PRYOR, Circuit Judges, and FORRESTER[*], District Judge.

PRYOR, Circuit Judge:

The question in this interlocutory appeal is whether a violation of the Anti-Kickback Statute can form the basis for a qui tam action under the False Claims Act. Gerald and Frances Burleson routinely provided medical services for which they submitted claims for reimbursement to Medicare, and each year, the Burlesons certified that they complied with the Anti-Kickback Statute. Because it is undisputed that a violator of the Anti-Kickback Statute is disqualified from participating in a Medicare program, the government stated a claim, under the False Claims Act, when it alleged that the Burlesons had submitted claims for Medicare reimbursement with knowledge that they were ineligible for that reimbursement. We affirm the district court.

## I. BACKGROUND

In December 2001, Brent McNutt, a former employee of a medical services company owned by the Burlesons, filed a qui tam action against the Burlesons and five medical services companies that they owned, Haleyville Medical Supplies, City Pharmacy, Care Medical, Care Pharmacy, and Winfield Medical, for violations of the False Claims Act. 31 U.S.C. § 3729(a). In 2002, the United

---

[*] Honorable J. Owen Forrester, United States District Judge for the Northern District of Georgia, sitting by designation.

2

States Attorney for the Northern District of Alabama opened parallel criminal and civil investigations of the Burlesons' activities. The district court ordered a stay of discovery pending the criminal investigation and any later criminal proceeding, unless all defendants waived their Fifth Amendment privilege against self-incrimination.

The government filed a complaint in intervention. The government alleged that Medicare providers are required to enter a provider agreement with the government, and under the terms of the agreement, the Medicare provider certifies that it will comply with all laws and regulations concerning proper practices for Medicare providers. One of the laws included in this certification is the Anti-Kickback Statute. 42 U.S.C. § 1320a-7b(b). The government alleged that a Medicare "provider's compliance with its provider agreement is a condition for receipt of payments from the Medicare program."

The government also alleged detailed facts about the Burlesons' activities. The government alleged that the companies owned by the Burlesons were Medicare providers and the Burlesons violated the Anti-Kickback Statute by paying kickbacks camouflaged as rental payments and commissions to pharmacists and other individuals. The Burlesons issued monthly checks to referring phamacists. The amount of the checks were a percentage, typically 20 to 25

percent, of the amount the Burlesons received from Medicare for services provided to the patients referred by those pharmacists. To conceal the nature of the kickback payments, the Burlesons characterized each check as "rent" in the "memo" portion of the check.

The government also alleged that the Burlesons paid kickbacks to two respiratory therapists and a doctor's patient representative for referring Medicare patients to the Burlesons. The government identified specific claims submitted by the Burlesons to Medicare for reimbursement for services, which had been rendered to patients referred by the individuals receiving kickbacks:

> An example of such a transaction is found in Patient A, who received a prescription dated April 24, 2001. Burleson submitted the claim form on June 11 and/or 13, 2001 for reimbursement for patient A. Another example of the said transactions is found in Patient B who received a prescription dated September 30, 2001. Burleson submitted the claim form on November 16, 2001. Vicky Wesson received a commission for the referral of patients A and B.
> . . .
> Patient C . . . received a prescription dated August 18, 1999. Burleson submitted the claim form on November 17, 1999, for reimbursement for Patient C. . . . Patient D . . . received a prescription dated February 26, 1999. Burleson submitted the claim for on March 10, 1999. Higgins received commissions on the referral of patients C and D.

The government alleged that, by virtue of these acts, the Burlesons knowingly presented, or knowingly caused to be presented, false or fraudulent claims for payment in violation of the False Claims Act.

4

The Burlesons filed a motion to dismiss for failure to state a claim upon which relief could be granted. The district court denied the motion, but encouraged the Burlesons to request the court to certify the question for interlocutory appeal. After the Burlesons filed that request, the district court certified the following question for interlocutory appeal: "whether a violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)[,] can form a basis for a claim pursuant to the False Claim[s] Act, 31 U.S.C. § 3729(a)(1) and 31 U.S.C. § 3729(a)(3)." This Court then granted the Burlesons' petition for interlocutory appeal.

## II. STANDARD OF REVIEW

We review de novo questions of statutory interpretation and the denial of a motion to dismiss for failure to state a claim. See Swann v. Southern Health Partners, Inc., 388 F.3d 834, 835 (11th Cir. 2004); Rodriguez v. Lamer, 60 F.3d 745, 747 (11th Cir. 1995). Because this appeal is from the denial of a motion to dismiss for failure to state a claim, we "view the allegations of the complaint in the light most favorable to the plaintiff[], consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1288 n.12 (11th Cir. 2005).

## III. DISCUSSION

The False Claims Act is the primary law on which the federal government relies to recover losses caused by fraud. Avco Corp. v. Dept. of Justice, 884 F.2d 621, 622 (D.C. Cir. 1989). The Act creates civil liability for making a false claim for payment by the government:

> Any person who–
> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; [or]
> . . . .
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;
> . . . .
> is liable to the United States Government. . . .

31 U.S.C. § 3729(a). The Act also permits private citizens to bring qui tam suits to enforce the Act. Id. § 3730(b).

The Anti-Kickback Statute makes it a felony to offer kickbacks or other payments in exchange for referring patients "for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(2)(A). Neither party disputes that compliance with federal health care laws, including the Statute, is a condition of payment by the Medicare program. The Burlesons do not dispute that their failure to comply with the Statute, if true, disqualified them from receiving payment as part of a Medicare program.

6

The Burlesons argue that the government seeks to hold them liable for nothing more than falsely certifying on a Medicare enrollment form that they would comply with the Statute. The Burlesons contend that the government "has failed to identify a false claim." We disagree.

When a violator of government regulations is ineligible to participate in a government program and that violator persists in presenting claims for payment that the violator knows the government does not owe, that violator is liable, under the Act, for its submission of those false claims: "The False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." United States ex rel. Clausen v. Laboratory Corp. of America, Inc., 290 F.3d 1301, 1311 (11th Cir. 2002). The violation of the regulations and the corresponding submission of claims for which payment is known by the claimant not to be owed makes the claims false under sections 3729(a)(1) and (3).

The government has alleged a valid claim against the Burlesons. The government has alleged that the Burlesons violated the Anti-Kickback Statute; compliance with the Statute is necessary for reimbursement under the Medicare program; and the Burlesons submitted claims for reimbursement knowing that they

7

were ineligible for the payments demanded in those claims.  This allegation is not general or speculative: the government has identified as false numerous specific claims the Burlesons made to the federal government.  Although the Burlesons raise several additional arguments for reversal, those arguments are also without merit.

## IV.  CONCLUSION

Because the government has alleged that the Burlesons submitted claims for payment knowing that the government did not owe the requested amounts, the district court properly denied the Burlesons' motion to dismiss.

**AFFIRMED.**