**UNITED STATES of America ex rel. J. Michael MASTEJ, Plaintiffs,**

v.

**HEALTH MANAGEMENT ASSOCIATES, INC. and Naples HMA, LLC, Defendants.**

**Case No. 2:11–cv–89–FtM–29DNF.**

United States District Court, M.D. Florida, Fort Myers Division.

Feb. 16, 2012.

Opinion Denying Reconsideration July 13, 2012.

Christopher D. Gray, Rachael Lynne Wood, Florin Roebig, PA, Palm Harbor,

FL, Lacy R. Harwell, Jr., U.S. Attorney's Office, Tampa, FL, Dani Smith, Strasburger & Price, LLP, Frisco, TX, Elizabeth B. Kamin, Gary J. Siller, John K. Spiller, Strasburger & Price, LLP, Houston, TX, for Plaintiffs.

Adam T. Pankratz, SNR Denton, Kansas City, MO, Daniel Barnowski, Gadi Weinreich, SNR Denton U.S. LlP, Washington, DC, Gabriel L. Imperato, Broad and Cassel, Ft. Lauderdale, FL, Justine N. Margolis, SNR Denton U.S. LLP, St Louis, MO, Scott J. Flint, Broad and Cassel, Tampa, FL, for Defendants.

## OPINION AND ORDER

JOHN E. STEELE, District Judge.

This matter comes before the Court on Defendants' Joint Motion to Dismiss the Second Amended Complaint (Doc. # 59) filed on May 17, 2011, by defendants Health Management Associates, Inc. (MHA) and Naples HMA, LLC (Naples HMA) (collectively, the defendants).

Plaintiff, Relator J. Michael Mastej (relator or Mastej) filed a memorandum in opposition to the motion on May 31, 2011. (Doc. # 60.) Defendants filed a reply in support of their motion. (Doc. # 64.) The United States (the Government), although it declined to intervene (Doc. # 76), filed a statement of interest in response to the motion (Doc. # 65) to which defendants filed a response. (Doc. # 66.)

## I.

Mastej brought this *qui tam*[1] action asserting violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.* (FCA) through violations of the Stark Law[2] and the Anti–Kickback Statute.[3] He asserts four causes of action under the False Claims Act: (1) presentation of false claims[4] (Count I); (2) making or using a false record or statement to cause a claim to be paid[5] (Count II); (3) making or using a false record or statement to avoid an obligation or refund[6] (Count III); and (4) conspiring to

---

1. The False Claims Act may be enforced through civil actions initiated by the government or suits by private individuals, on behalf of the United States, called *qui tam* actions. The private plaintiffs in *qui tam* actions are known as "relators," and the Act entitles them to a percentage of any recovery made on behalf of the government from a False Claims Act defendant. The government, after receiving the complaint, has the opportunity to intervene. 31 U.S.C. § 3730(b)(2). If the Government chooses to intervene, it has "the primary responsibility for prosecuting the action...." 31 U.S.C. § 3730(c)(1). However, "[i]f the Government elects not to proceed with the action, the [relator has] the right to conduct the action." 31 U.S.C. § 3730(c)(3). If the government does not intervene and the relator successfully prosecutes the case, the court awards him between 25 and 30 percent of the recovery proceeds. 31 U.S.C. § 3730(d)(1). If the government prosecutes the action, the relator is still entitled to between 15 and 25 percent of the recovery proceeds. 31 U.S.C. § 3730(d)(2). Here, the government elected not to intervene, leaving Mastej to prosecute the action alone.

2. 42 U.S.C. § 1395nn, commonly referred to as the Stark Law, the Stark Statute, or the Stark Amendment, prohibits a hospital from submitting Medicare claims based on patient referrals from physicians having certain kinds of financial relationships with the hospital that might improperly influence the physician's medical judgment.

3. The Anti–Kickback Statute makes it a felony to offer kickbacks or other payments in exchange for referring patients "for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a–7b(b)(2)(A).

4. *See* 31 U.S.C. § 3729(a)(1)(A), formerly codified as 31 U.S.C. § 3729(a)(1).

5. *See* 31 U.S.C. § 3729(a)(1)(B), formerly codified as 31 U.S.C. § 3729(a)(2).

6. *See* 31 U.S.C. § 3729(a)(1)(G), formerly codified as 31 U.S.C. § 3729(a)(7).

commit false claims[7] (Count IV).

The defendants assert that the Second Amended Complaint should be dismissed because relator failed to meet the pleadings requirements set forth in the Federal Rules of Civil Procedure. In response, Mastej contends that he has met the pleading requirements and alternatively asserts that he should be granted leave to amend his complaint.[8] For the reasons discussed below, the Court finds that relator has failed to meet the pleading requirements set forth in Rule 9 but will grant him leave to amend.

## II.

In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir.2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

■ The Eleventh Circuit requires that in order to avoid dismissal of a FCA claim, a relator must plead "facts as to time, place, and substance of the defendants' alleged fraud, specifically, the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *United States ex rel. Seal v. Lockheed Martin Corp.*, 429 Fed.Appx. 818, 820 (11th Cir.2011); *citing United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1302 (11th Cir.2010); *see also United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir.2002); *United States ex rel. Shurick v. Boeing Company*, 330 Fed.Appx. 781, 783 (11th Cir.2009) ("the complaint must allege facts as to time, place and substance of the defendants's alleged fraud, [and] the details of the defendants allegedly fraudulent acts, when they occurred, and who engaged in them.") Failure to satisfy Rule 9(b) is grounds to dismiss the Complaint. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir.2005).

■ Rule 9(b)'s particularity requirement for fraud allegations exists to put defendants on notice as to the exact misconduct with which they are charged and to protect defendants against spurious charges. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir.2001). The Eleventh Circuit has cautioned that "Rule 9(b) must not be read to abrogate rule 8, however, and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims*, 755 F.2d 810, 813 n. 3 (11th Cir.1985).

## III.

The Second Amended Complaint alleges the following:

Defendant HMA is a public company incorporated in Delaware. It has various subsidiaries and operates approximately fifty-six (56) hospitals in fifteen (15) states.

---

7. *See* 31 U.S.C. § 3729(a)(1)(C); formerly codified as 31 U.S.C. § 3729(a)(3).

8. The Government "takes no position as to whether Relator in this case has adequately pled facts that would state a cognizable claim under the FCA...." (Doc. # 65, p. 2.) Instead, the Government contends the defendants have misstated the applicable law.

Defendant HMA Naples is a HMA subsidiary doing business as "Physicians Regional Medical Center." Physicians Regional Medical Center has two campuses that operate under the same license and provider number: (1) Physicians Regional Medical Center, Collier Boulevard (Collier Boulevard Facility) and (2) Physicians Regional Medical Center, Pine Ridge (Pine Ridge Facility). (Doc. # 58, ¶¶ 54, 57.)

Relator was employed in various capacities by defendant HMA, or one of its subsidiaries, from January 2001 through October 2007. On February 5, 2007, he became Chief Executive Officer (CEO) of the Collier Boulevard Facility. Relator contends that both during and after his employment the defendants participated in three (3) separate schemes to present false claims to the federal government in violation of the FCA.

## A. Scheme One

In the first of these schemes, relator alleges that despite the fact that neither the Collier Boulevard nor Pine Ridge Facilities offered emergency surgery or emergency neurosurgery services, Geoff Moebius (Moebius), the CEO of the Pine Ridge facility, negotiated call coverage contracts with the following neurosurgeons: Dr. Michael Lusk, Dr. John Drygas, Dr. Mark Gerber, and Dr. Rick Bhasin of Neuroscience and Spine Associates.[9] Pursuant to the call coverage contracts, each neurosurgeon was paid $1,000 for each weekday and $2,000 for each weekend call coverage was provided. Relator contends that the total payments to these neurosurgeons were significantly above

the fair market value for the services provided and were not commercially reasonable. Relator contends that Moebius informed him that the call contracts were important to keep the neurosurgeons referring lucrative scheduled surgeries at the Pine Ridge Facility. Moebius further indicated to relator that the surgeons would refer scheduled surgeries to the Collier Boulevard Facility if it shared in the cost of the call coverage, but relator declined. (Id. at ¶¶ 62–65.)

## B. Scheme Two

In the second scheme, relator contends that the defendants conspired to provide improper remuneration and/or enter into prohibited financial relationships with several physicians for the purpose of generating patient referrals, including Medicare and Medicaid patients, to the Collier Boulevard Facility. As part of this scheme, in 2008 the defendants flew Dr. Figlesthaler, Dr. Beretta, Dr. Bertram, and Dr. Hanson in HMA's corporate jet to the Masters Golf Tournament in Augusta, Georgia. The flight was at no cost to the physicians. In addition, the physicians were provided with complimentary car rentals, all-access badges to the tournament, and food and drink. Each of these doctors were flown on a separate flight and accompanied by a hospital administrator who discussed having the physician engage in additional business with the Collier Boulevard Facility.[10] Following the Masters Tournament, relator contends that the physicians "referred Medicare and Medicaid patients (and other patients) for treatment at Pine

9. The call coverage contracts with Doctors Lusk, Drygas and Gerber became effective in January 2007 and Dr. Bhasin's contract became effective some time in 2009. (¶ 63.)

10. Specifically, on April 10, 2008, Dr. Figlesthaler was accompanied by Toby Butler, Chief Financial Officer of the Collier Facility,

and Moebius. Dr. Beretta flew with John Turner, Practice Manager for the Pine Ridge Facility on April 11, 2008. Dr. Betram flew with Chief Operating Officer of HMA, Kelly Curry, and Moebius on April 13, 2008. Finally, Dr. Hanson flew with Todd Lupton, Chief Financial Officer of Physicians Regional Medical Center, and Moebius on April 13, 2008.

Ridge and Collier Boulevard, for which Defendants systematically submitted false and illegal claims to the Government under the Medicare and Medicaid programs." (*Id.* at ¶¶ 70–72.)

**C. Scheme Three**

As to the third scheme, Mastej alleges that the defendants agreed with a urology group, Specialists in Urology, not to recruit other urologists in exchange for the group practicing at, and referring patients to, the Pine Ridge and Collier Boulevard Facilities. The Second Amended Complaint does not specifically identify any wrongdoers as to this scheme nor does it describe when these allegations occurred. (*Id.* at ¶ 73.)

**D. Violations of the FCA**

Relator contends that these three schemes violated the Stark Law and/or the Anti–Kickback Statute. Defendants knew that compliance with these laws was a prerequisite to being reimbursed under Medicare, and defendant's certified in their Form CMS–2552, commonly referred to as Hospital Cost Reports, that they were in compliance with federal law.[11] The Government, relying on these false certifications, paid on the claims. Further, relator contends that the false Medicare cost reports necessarily caused submission of false claims or incorrect data to the State Medicare program.

**IV.**

**A. Count I**

**1. Particularity of Pleading**

Count I is brought pursuant to 31 U.S.C. § 3729(a)(1)(A), which imposes liability on a person who "knowingly *pres-ents, or causes to be presented,* to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval." *Id.* (Emphasis added). This section of the act requires that false claims actually be submitted to the federal government.

■■■ The Eleventh Circuit has repeatedly held that the "central question" in a claim brought pursuant to this section of the statute "is whether the defendant ever presented [or caused to be presented] a 'false or fraudulent claim' to the government." *Hopper v. Solvay Pharm., Inc.,* 588 F.3d 1318, 1326 (11th Cir.2009); quoting *Clausen,* 290 F.3d at 1311. Because the fraudulent act under this section is the presentation of false claims, the presentment itself must be pled with particularity. In order to plead with sufficient particularity, a complaint must include the "who," "what," "where", "when" and "how" of the alleged fraudulent submission to the government. *Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1014 (11th Cir.2005) *see also United States ex rel. Atkins v. McInteer,* 470 F.3d 1350, 1357 (11th Cir.2006). Further, Rule 9(b)'s directive that "the circumstances constituting fraud or mistake shall be stated with particularity" does not permit a FCA plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that the claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government. *United States ex rel. Seal 1 v. Lockheed Martin Corp.,* 429 Fed.Appx. 818, 821 n. 1 (11th Cir.

---

11. Relator contends the following Hospital Cost Reports were falsely submitted: (1) on or about May 30, 2008, for the period of January 1, 2007 through December 31, 2007, signed by Jeff Moebius; (2) on or about June 7, 2010, for the period of January 1, 2008 to December 31, 2008, signed by Todd Lupton; (3) on May 26, 2010, for the period of January 1, 2009 through December 31, 2009, signed by Todd Lupton. (*Id.,* at ¶ 33.)

2011); *Clausen*, 290 F.3d at 1311. A court may not make an assumption about a FCA defendant's submission of actual claims to the Government without stripping all meaning from Rule 9(b)'s mandate of specificity or ignoring that the "true essence of the fraud" involves an actual claim for payment from the Government and not merely a preparatory scheme. *Atkins*, 470 F.3d at 1357; *see also United States ex rel. Baklid–Kunz v. Halifax Hospital Medical Center*, slip opinion, 2011 WL 2269968 (M.D.Fla. June 6, 2011).

 A violator of government regulations is ineligible to participate in a government program and when that violator presents claims for payment that the violator knows the government does not owe, the FCA makes that violator liable for its submission of those false claims. *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256 (11th Cir. 2005). "[W]here the government pays funds to a party, and would not have paid those funds had it known of a violation of a law or regulation, the claim submitted for those funds contained an implied certification of compliance with the law or regulation and was fraudulent." *See United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F.Supp.2d 28, 33 (D.D.C.2003) (citation omitted); *see also U.S. ex rel. Compton v. Circle B Enterprises, Inc.*, 2010 WL 942293, at *7 (M.D.Ga. Mar. 11, 2010). Nevertheless, "[t]he False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir.2002). Thus, to violate this section of the Act, a defendant must have violated the regulations and submitted claims for which payment is known by the claimant not to be owed a false claim under the Act.

For example, in *McNutt* the Government alleged the defendant violated the Anti–Kickback Statute, that compliance with the statute was necessary for Medicare reimbursement, and that the defendants submitted claims for reimbursement despite the fact that they were ineligible for the payments demanded on those claims. The Court found the government had pled its claims with sufficient particularity because the allegation was neither general nor speculative because "the government identified *specific claims submitted* by [the defendants] to Medicare for reimbursement for services, which had been rendered to patients referred by the individuals receiving kickbacks." *McNutt*, 423 F.3d at 1258. (Emphasis added).

 Here, unlike *McNutt*, relator does not specifically identify a single claim within the various Hospital Cost Reports related to any of the three schemes. He fails to identify a single claim for reimbursement for patients who were referred by the Neuroscience and Spine Associates in Scheme One, the various doctors who attended the Masters Tournament in Scheme Two, or any urologist from Specialists in Urology in Scheme Three. Instead, he summarily concludes that these three schemes necessarily resulted in the defendant's systematic submission of false claims. However, the notion that "a pattern of improper practices of the defendants leads to the inference that fraudulent claims were submitted to the government" has been rejected by the Eleventh Circuit. *Corsello*, 428 F.3d 1008, 1013. Because the Court should not make inferences about the submission of fraudulent claims, which would "strip[ ] all meaning from Rule 9(b)'s requirements of specificity" *Clausen*, 290 F.3d at 1312 n. 21, the Court

finds relator's Second Amended Complaint fails to plead Count I with the requisite specificity.

## 2. Indicia of Reliability

Rule 9 can also be satisfied if a Complaint has an "indicia of reliability" that indicates that false claims were in fact submitted to the government. *Clausen*, 290 F.3d at 1311. For example, in *United States ex rel. Walker v. R & F Props. of Lake Cnty., Inc.*, 433 F.3d 1349, 1360 (11th Cir.2005), the relator alleged personal knowledge regarding the defendants' billing practices. The Court found that this gave rise to a well-founded belief that the defendant submitted actual false or fraudulent claims. The Eleventh Circuit found the allegations reliable because they were grounded in first-hand knowledge that explained why the relator believed a specific defendant submitted false or fraudulent claims to the government. *Id.*

█ Relator contends that he has asserted an adequate indicia of reliability, and therefore has met the pleading requirements of Rule 9. He alleges that he began his tenure with HMA as Vice President of Acquisitions and Development where he attended monthly operations meetings that included the Chief Executive Officer, Chief Operating Officer, Regional Senior Vice Presidents, Divisional Vice Presidents, and corporate department heads. (Doc. # 58, ¶¶ 58–59.) Prior to his employment with HMA, relator held a number of positions within the health care industry, including Medicare/Medicaid auditor for Michigan Blue Cross, a reimbursement specialist with Humana, and Chief Executive Officer of several hospitals and medical centers. (*Id.* at ¶ 56.) Relator contends that his specialized experience provides the indicia of reliability

required to meet Rule 9's heightened pleading requirement.

The Court first notes that relator makes no allegations that he had any familiarity, through his various roles with the defendants and subsequent to his tenure with the defendants, with the billing practices of the defendants. Thus, unlike *Walker*, relator has not pled any facts that indicate that he had any specific knowledge through his various positions as to the actual submission of claims. Nonetheless, even if the Court were to infer that a CEO has personal knowledge of billing, the Court would still find that plaintiff's Complaint lacks the requisite indicia of reliability.

According to the Second Amended Complaint, Mastej ended his tenure with the defendants in October, 2007. However, the first alleged false Hospital Cost Report was not submitted until on or about May 30, 2008, seven (7) months after relator was employed by the defendants. Thus, relator had no specific knowledge as to the alleged fraudulent claims that were submitted.[12] Thus, while the Court may infer a general knowledge of defendant's billing practices and submission of claims through his role as CEO, he has not pled any facts showing he had any specific knowledge related to the submission of the specific claims at issue in this matter. Relator does not provide an explanation for why he believes fraudulent claims were ultimately submitted and instead assumes that because Hospital Cost Reports were submitted to the government, they must have included claims for patients referred through the three various schemes. However, because the actual presentment of the claims require particularity, or otherwise an indicia of reliability, relator's role

---

12. The Court further notes that relator was not employed by the defendants during the entirety of Scheme Two.

as CEO before the claims were submitted is simply not enough. Thus, defendants' motion to dismiss Count I is granted.

## B. Count II

Count II is brought pursuant to 31 U.S.C. 3729(a)(1)(B), which creates liability for a defendant who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Unlike Section 3729(a)(1)(A), this Section does not have a presentment clause. The Supreme Court noted that "[t]he inclusions of an express presentment requirement in subsection [ (a)(1)(A) ], combined with the absence of anything similar in subsection [ (A)(1)(B) ], suggests that Congress did not intend to include a presentment requirement in subsection [ (A)(1)(B) ]." *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 128 S.Ct. 2123, 170 L.Ed.2d 1030 (2008). Thus, the Eleventh Circuit has held that this section "does not demand proof that the defendant presented or caused to be presented a false claim to the government or that the defendant's false record or statement itself was ever submitted to the government." *Hopper*, 588 F.3d at 1327. Instead, a relator must show "that (1) the defendant made a false record or statement for the purpose of getting a false claim paid or approved by the government; and (2) the defendant's false record or statement caused the government to actually pay a false claim, either to the defendant itself, or to a third party." *Id.* Further, while subsection (a)(1)(B) relieves a plaintiff of the presentment requirement, the text of the subsection which proscribes false statements "to get a false or fraudulent claim *paid or approved by the Government*" suggests that "Congress intended this subsection to impose liability for false statements that actually cause the government to pay amounts it does not owe." *Id.*; *see also United States ex rel. Schmidt*

*v. Zimmer, Inc.*, 386 F.3d 235, 242 (3d Cir.2004).

In *Hopper*, the plaintiff alleged that the defendant utilized a sophisticated marketing plan to induce physicians to prescribe a drug for purposes not approved by the Federal Drug Administration (FDA), and this conduct resulted in the submission for reimbursement by Government Healthcare Programs even though the defendants were not eligible for reimbursement. *Hopper*, 588 F.3d at 1323. The complaint further alleged that the defendants provided kickbacks to physicians and other healthcare providers in order to induce them to prescribe the drug for purpose that were not approved by the FDA. *Id.* The Eleventh Circuit rejected the relator's position that this section is an attempt provision that imposes liability for statements made with the intent to defraud the government, whether or not the government actually pays the false claim. It reasoned that although a defendant need not show that false statements themselves were presented to the government, or that the defendant need not personally submit a false claim, the relator must show that the government paid a false claim to prove a violation. *Id.* Therefore, a relator must allege with particularity, pursuant to Rule 9(b), that the false statements ultimately led the government to pay amounts it did not owe. *Id.* at 1329. Ultimately, however, the Court did not analyze whether the Complaint had alleged with particularity the payment of a false claim because it found the Complaint was otherwise deficient; it failed to allege that the defendants intended for the government to rely on their false statements in deciding whether to pay a false claim.

■ Here, relator fails to plead both requirements of this claim. First, Mastej fails to show that the defendants acted with the purpose of getting a false claim

paid. Although he makes this conclusory allegation, the complaint is otherwise without factual support. Within the Second Amended Complaint, he pleads the purposes of the three (3) schemes: (1) Scheme One was "to entice the neurosurgeons to practice and refer their patients to the two hospitals" (Doc. # 58, ¶ 65); (2) the "intended purpose" of Scheme Two "was to generate business for [d]efendants" (*Id.* at ¶ 71); and (3) the purpose of Scheme Three was to make an exclusive urology arrangement with Specialists in Urology in exchange for the referral of patients. The Complaint fails to link the purposes of these schemes with the intent of submitting false statements to the Government with the intention of the Government relying on the statement as a condition of payment. Simply put, "[t]he direct link between the [three schemes] and the Government's decision to pay or approve a false claim is too attenuated to establish liability." *Hopper*, at 1330.

Secondly, the Second Amended Complaint fails to plead the actual payment by the government with the requisite specificity. Relator merely alleges that the Government paid on these claims, but does not provide the dates, amounts, or any other identifying detail of any of these alleged payments. Furthermore, because the relator was not employed by the defendants when these reimbursements would have been received, the Second Amended Complaint does not have the indicia of reliability to excuse this failure. Plaintiff's conclusory allegations that the Government paid these claims is not sufficient to meet the requirements of Rule 9. Accordingly, defendants' motion to dismiss Count II is granted.

## C. Count III

 Count III is brought pursuant to 31 U.S.C. § 3729(a)(1)(G), which states that the U.S. government may "recover a civil penalty from any person who 'know-

ingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.'" *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir.1999). This section, commonly referred to as the "reverse-false-claim provision," was added in 1986 "to provide that an individual who makes a material misrepresentation to avoid paying money owed the Government would be equally liable under the Act as if he had submitted a false claim to receive money." *Cullins v. Astra, Inc.*, 2010 WL 625279 (S.D.Fla. Feb. 17, 2010) *quoting* S. Rep. No. 99–345, at 18; 1986 U.S.C.C.A.N. 5266, 5283. In a Section 3729(a)(1)(G) action, "'the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated.'" *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 63 n. 1 (D.C.Cir.2008) (*quoting United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 653 (5th Cir.2004)). A plaintiff must demonstrate the following five (5) elements to prevail on a reverse-false-claim action: (1) a false record or statement and (2) the defendant's knowledge of the falsity; (3) that the defendant makes, uses, or causes to be made or used a false statement; (4) for the purpose to conceal, avoid, or decrease an obligation to pay money to the government; and (5) materiality of the misrepresentation. *Cullins*, 2010 WL 625279 at *5; *see also United States v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir.2008) (collecting cases).

 Here, Mastej simply makes legal conclusions that defendants violated this section of the Act but makes no specific allegations to support the claim. The Complaint fails to allege any amounts owed to the government by the defendants or otherwise provide any other information

that puts defendants on notice as to the substance of the plaintiff's claims. Relator's allegations related to this claim are general and conclusory and fail to meet the pleading requirements in Rule 9. Thus, the motion to dismiss Count III is granted.

### D. Count IV

Count IV, which asserts that the defendants conspired to defraud the government in violation of section 3729(a)(1)(C) of the FCA, also requires compliance with Rule 9(b). *Corsello,* 428 F.3d at 1014. To state a claim under section 3729(a)(1)(C) a plaintiff must demonstrate "(1) that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim." *Id.* quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life & Accident Ins. Co.,* 721 F.Supp. 1247, 1259 (S.D.Fla.1989).

▮▮ Plaintiff's bare legal conclusions of conspiracy are wholly unsupported by specific factual allegations of any agreement or an overt act. *See Corsello,* 428 F.3d at 1014. The relator fails to describe, in specific detail, an act that furthered the object of a conspiracy. As discussed above, relator makes no specific allegations that any Medicare or Medicaid patient was referred to the defendants by the various physicians identified in the Second Amended Complaint. Nor does relator identify any specific claims included in the alleged fraudulent submissions that resulted from the alleged referrals. The Second Amended Complaint does little to put defendants on notice as to the specific basis of the

conspiracy claim. Thus, defendant's motion to dismiss Count IV is granted.[13]

### V.

Although the Court finds that relator failed to plead his allegations with sufficient particularity, the Court will provide Mastej the opportunity to amend his Complaint.

Accordingly, it is now

**ORDERED:**

1. Defendants' Joint Motion to Dismiss the Second Amended Complaint (Doc. # 59) is **GRANTED** and the Second Amended Complaint is dismissed without prejudice.

2. Mastej may file an Amended Complaint within twenty-one (21) days of the signing of this Opinion and Order.

3. Within twenty-eight (28) days of this Opinion and Order, the parties shall file a Joint Case Management Report with new scheduling dates.

### *OPINION AND ORDER*

This matter comes before the Court on Relator's Motion for Reconsideration and/or Motion for Limited Discovery Related to False Claims (Doc. # 80) filed on March 9, 2012. Defendants, Health Management Associates, Inc. and Naples HMA LLC (collectively, defendants) filed an opposition on March 22, 2012. (Doc. # 83.) For the reasons set forth below, the motion is denied.

### I.

This matter is a *qui tam* action brought by Mastej asserting violations of the False Claims Act, 31 U.S.C. 3729 *et* seq. through violations of the Stark Law and the Anti-

---

**13.** Because the Court finds that all four (4) counts were not pled with the specificity required by Rule 9, the Court need not address defendant's arguments that these counts were improperly asserted against HMA.

Kickback Statute. The Court set forth the factual background of this matter in its February 16, 2012, Order and will not repeat it here. (Doc. # 78, pp. 5–9.) On February 16, 2012, this Court issued an Order granting the defendants' Joint Motion to Dismiss the Second Amended Complaint for failure to meet the standards set forth in Fed.R.Civ.P. 9(b). The Court further found that the Second Amended Complaint lacked an "indicia of reliability" to excuse this failure. (Doc. # 78). The Court granted relator leave to amend and Mastej filed a Third Amended Complaint on March 8, 2012.[1] (Doc. # 79.) The following day, relator filed the subject motion seeking reconsideration of this Court's February 16, 2012, Opinion and Order and the Magistrate Judge's December 2, 2011, Order denying relator's motion to compel and granting defendants' motion to stay claims-related discovery. Alternatively, relator seeks the opportunity to conduct limited discovery to assist him in properly asserting his claims.

## II.

Reconsideration of a court's previous order is an extraordinary remedy and, thus, is a power which should be used sparingly. *Am. Ass'n of People with Disabilities v. Hood*, 278 F.Supp.2d 1337, 1339 (M.D.Fla. 2003) (citing *Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth.*, 814 F.Supp. 1072, 1072–73 (M.D.Fla.1993)). "A motion for reconsideration should raise new issues, not merely readdress issues litigated previously." *PaineWebber Income Props. Three Ltd. P'ship v. Mobil Oil Corp.*, 902 F.Supp. 1514, 1521 (M.D.Fla. 1995). The motion must set forth facts or law of a strongly convincing nature to demonstrate to the court the reason to reverse its prior decision. *Taylor Wood-*

*row*, 814 F.Supp. at 1073; *PaineWebber*, 902 F.Supp. at 1521. "When issues have been carefully considered and decisions rendered, the only reason which should commend reconsideration of that decision is a change in the factual or legal underpinning upon which the decision was based." *Taylor Woodrow*, 814 F.Supp. at 1072–73.

A motion for reconsideration does not provide an opportunity to simply reargue—or argue for the first time—an issue the Court has once determined. Court opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988). "The burden is upon the movant to establish the extraordinary circumstances supporting reconsideration." *Mannings v. Sch. Bd. of Hillsborough Cnty.*, 149 F.R.D. 235, 235 (M.D.Fla.1993). Unless the movant's arguments fall into certain limited categories, a motion to reconsider must be denied.

Under Rule 59(e), courts have "delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; (3) the need to correct clear error or prevent manifest injustice." *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D.Fla.1994).

## III.

### A. The Court's February 16, 2012 Order

Relator first asserts that because the defendants were not in compliance with the Anti–Kickback Statute and Stark Law, all claims submitted to the government were false. Therefore, relator need only

---

1. Defendants filed a Joint Motion to Dismiss the Third Amended Complaint (Doc. # 84)

which is pending before the Court.

plead that the defendants submitted claims to Medicare or Medicaid to meet Rule 9's pleading requirements. This argument was already considered and rejected by the Court. It is therefore inappropriate to re-raise this argument absent any intervening change in controlling law, new evidence, or clear error. None of these have been shown.

Second, relator complains that the Court's finding that the Second Amended Complaint does not have an "indicia of reliability" to excuse his failure to meet the pleading requirements of Rule 9(b) was incorrect with respect to Scheme One.[2] Relator contends that the Court's finding that he did not have an "indicia of reliability" to excuse his failure under Rule 9(b) was based on the fact that relator was not employed by HMA during the time false claims were submitted to the government. Relator contends that although the first Hospital Cost Report was submitted in May 2008, after his employment with HMA, this document is simply a final accounting of what was paid throughout the previous year. Therefore, false claims were submitted prior to the submission of the first Hospital Cost Report while he was employed with defendant as CEO. As a result, the Court should excuse relator's failure to meet Rule 9(b)'s pleading requirements with respect to his claims arising from Scheme One.

There is no basis for the Court to reconsider its finding. Relator makes no allegations that there has been an intervening change in law or the availability of new evidence. Further, he cannot demonstrate that the Court's determination was clear error. The Court's decision that relator's Second Amended Complaint lacked an indicia of reliability was based on relator's failure to allege that "he had any familiari-

ty, through his various roles with the defendants and subsequent to his tenure with the defendants, with the billing practices of the defendants" or "that he had any specific knowledge through his various positions as to the actual submission of claims." (Doc. # 78, p. 14.) The Court continued that "*even if* the Court were to infer that a CEO has personal knowledge of billing, the Court would still find that relator's Complaint lacks the requisite indicia of reliability." (*Id.*) (Emphasis added). The Court's conclusion was not based on the fact that relator was not employed as a CEO during the relevant time frame. The Court's consideration of Mastej's tenure as a CEO was an alternative basis for the Court's determination.

Nevertheless, relator acknowledges that he was not employed as a CEO when the first Annual Hospital Cost Report was submitted but contends that because he was employed when interim claims[3] were allegedly submitted to the government, his Complaint has an indicia of reliability. Relator was CEO of the *Collier Boulevard* facility and not the *Pine Ridge* facility where these neurosurgeons worked. Even assuming CEO's have personal familiarity of billing, the Court cannot impute knowledge of the billing practices of the Pine Ridge Facility to relator simply because he served as CEO of the Collier Boulevard facility. Relator has failed to demonstrate the Court's finding was made on clear error and the request to reconsider the February 16, 2012, Opinion and Order is denied.

## B. The Magistrate Judge's December 2, 2011, Order

Alternatively, relator seeks reconsideration of the Magistrate Judge's December

---

**2.** Relator does not contest this finding with respect to Schemes Two and Three.

**3.** The Complaint does not specifically identify a single interim claim submitted by the neurosurgeons in Scheme One.

2, 2011, Order denying his motion to compel and granting the defendant's motion for stay of claim-related discovery. (Doc. # 72.) Fed.R.Civ.P. 72(a) requires that a party "serve and file objections" to a Magistrate Judge's non-dispositive Order "within 14 days after being served with a copy". Relator failed to file any objections and the time to do so has long passed. Furthermore, relator has provided no basis for reconsideration of the Magistrate's Order as he has made no attempt to assert that there has been an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice. The motion to reconsider the Magistrate Judge's Order is denied.

## C. Alternative Motion for Limited Discovery

As a last resort, relator requests that the Court permit him to engage in limited discovery. Specifically, relator requests that the Court require defendants to "confirm via written interrogatories that Medicare and Medicaid claims were submitted between 2007 and 2010 for the following doctors and groups: Dr. Michael Lusk, Dr. John Dygas, Dr. Mark Gerber, Dr. Rick Bhasin, Dr. Gary Colon, Dr. Paul Dernbach, Neuroscience and Spine Associates, Dr. Aldo Bertta, Dr. William Figlesthaler, Dr. Morton Bertram, and Dr. Hanson." (Doc. # 80, p. 8.) Relator further requests that the Court require defendants to produce a spreadsheet of all Medicare and Medicaid claims submitted by the relevant doctors and groups between 2007 and 2010.[4] Relator contends that he cannot plead his case with the required particularity without this information.

Rule 9(b)'s very purpose is to protect from discovery defendants facing inadequately pled fraud claims. *See Friedlan-*

der v. Nims, 755 F.2d 810, 813 n. 3 (11th Cir.1985) ("The particularity rule serves several purposes. Its clear intent is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed.") (internal citations omitted). The Court finds no basis to permit limited discovery in this matter.

Accordingly, it is now

**ORDERED:**

Relator's Motion for Reconsideration and/or Motion for Limited Discovery Related to False Claims (Doc. # 80) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this 13th day of July, 2012.

---

4. Relator asserts that the defendants previously agreed to provide him with this document but have since refused to provide the requested information.