# CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia,
ex rel. FX Analytics

v.

Bank of New York Mellon

May 1, 2012

Case No. CL-2009-15377

By Judge R. Terrence Ney

This matter comes before the Court on Defendant The Bank of New York Mellon's ("BNYM" or "the Bank") Motion for Reconsideration of this Court's ruling on the February 10, 2012, Demurrer, and BNYM's Notice of Supplemental Authority. After considering the pleadings and memoranda of counsel, the Court took the matter under advisement. Oral argument is not necessary. The following embodies the Court's ruling.

*Parties*

The description of the parties is derived from the Commonwealth's Second Amended Complaint in Intervention. *See Commonwealth of Virginia, ex rel. FX Analytics*, Case No. CL-2009-15377, Second Am. Compl. ¶¶ 28-56.

The Commonwealth of Virginia is the Plaintiff and brings this Complaint on her own behalf and on behalf of those agencies of state government, political subdivisions, and divisions of political subdivisions as more fully set forth in the Complaint.

The Bank of New York Mellon is a New York state chartered bank, which houses parent company Bank of New York Mellon Corporation's institutional businesses, including Asset Servicing, Issuer Services, Treasury Services, Broker-Dealer and Advisor Services, and the bank-advised business of Asset Management.

The following parties shall be known collectively as the "Virginia Funds."

The Virginia Retirement System ("VRS") is a body corporate and political subdivision of the Commonwealth of Virginia, pursuant to Va. Code §§ 51.1-124.3 and 51.1-124.4, and is headquartered in Richmond, Virginia. VRS administers a defined benefit plan, a group life insurance plan, a deferred compensation plan, and a cash match plan for the Commonwealth's public sector employees, as well as an optional retirement plan for selected employees, and the Virginia Sickness and Disability Program for state employees. VRS currently administers benefits and services for approximately 600,000 members, retirees, and beneficiaries. VRS has been a custodian banking client of BNYM, or its predecessor entities, since 1988.

The Fairfax County Employees' Retirement System provides retirement benefits for the classes of employees set forth in the ordinance. The Fairfax County Employees' Retirement System is a cost-sharing, multiple employer, public employee retirement system providing defined benefit pension plan coverage to full-time and certain part-time Fairfax County and Fairfax County public schools' employees not covered by the Fairfax County Police Officers Retirement System, the Fairfax County Uniformed Retirement System, the ERFC, or VRS.

The Fairfax County Police Officers Retirement System was created to provide defined benefit pension plan coverage for sworn full-time law enforcement officers to the Fairfax County Police Department.

The Fairfax County Uniformed Retirement System was established in 1974 as a public employee retirement system providing defined benefit pension plan coverage for uniformed or sworn employees of the Fire and Rescue Department, helicopter pilots, the Sheriff's Department, the animal control division, and certain park police officers. In 2005, membership was extended to employees in non-administrative positions of the Department of Public Safety Communications, formerly included in the Fairfax County Employee's Retirement System.

The Fairfax County Employee's Retirement System, the Fairfax County Police Officers Retirement System, and the Fairfax County Uniformed Retirement System have been custodial banking clients of BNYM, or its predecessor entities, since 2002.

The Educational Employee's Supplemental Retirement System of Fairfax County ("ERFC") is a retirement system established by the Fairfax County Board of Supervisors. The ERFC is a defined benefit plan qualified

under 401(a) of the Internal Revenue Code. Funding is provided in part by employer and member contributions to the plan; income earned through investment of the plan's assets provides the majority of funding. ERFC was established in 1973 and its members include retirees, deferred, vested, and active Fairfax County Public Schools personnel who are employee full-time in monthly paid educational, administrative, and support staff positions. The ERFC has been a custodial banking client of BNYM, or its predecessor entities, since 1995.

FX Analytics is the Relator in this suit. The Relator was employed in the Foreign Exchange ("FX") trading department at BNYM in Pittsburgh, Pennsylvania. The Relator has more than twenty years of experience in foreign exchange currency trading. The Relator worked at BNYM for more than ten years. Throughout that time, the Relator observed or participated in reporting on interbank issues and developments and broader foreign exchange matters to the executive level of the Bank. The Relator observed BNYM's FX trading for its custodial clients.

## Procedural History

The original complaint in this action was filed in 2009 by the Relator, FX Analytics. The Commonwealth, pursuant to Virginia Code § 8.01-216.2, intervened as Plaintiff in the action and filed her First Complaint in Intervention on August 11, 2011.

This Court originally heard BNYM's Demurrer to the Complaint on November 18, 2011. After argument, the Court sustained the Demurrer as to all causes of action under the Virginia Fraud Against Taxpayers Act ("VFATA") except for a cause of action under § 8.01-216.3(A)(2) of the Act.

On February 10, 2012, the Court heard argument on a second Demurrer filed by BNYM. BNYM again argued that the Commonwealth had failed to state a cause of action under § 8.01-216.3(A)(2). The Court overruled that Demurrer.

BNYM then filed this Motion for Reconsideration and Notice of Supplemental Authority requesting the Court to reconsider its February 10, 2012, order overruling its Demurrer. This Motion is, in effect, a third effort by BNYM directed at the Court's rulings with specific respect to § 8.01-216.3(A)(2).

## Facts

The Second Amended Complaint-in-Intervention alleges that BNYM violated the Virginia Fraud Against Taxpayers Act ("VFATA"), Va. Code § 8.01-216.1 et seq., through the manner in which it executed certain foreign exchange transactions, known as standing instruction transactions

with the Funds. Specifically, the Complaint alleges that BNYM knowingly presented regular accountings of all transactions in the custody accounts for approval. The Complaint alleges that these accountings bore no relation to actual FX trades. The Complaint further alleges that BNYM devised a scheme to conceal those false rates, thereby allowing BNYM to profit from handling taxpayer retirement funds to the detriment of the Virginia Funds and the Commonwealth.

*Analysis*

## A. *Standard for Demurrer*

"A demurrer admits the truth of the facts contained in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations. A demurrer does not, however, admit the correctness of the pleader's conclusions of law." *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 102, 540 S.E.2d 134, 136-37 (2001), quoted in *DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 277 Va. 140, 142-43, 670 S.E.2d 704, 705 (2009).

In deciding whether to sustain a demurrer, a trial court must determine "whether the . . . motion for judgment alleged sufficient facts to constitute a foundation in law for the judgment sought, and not merely conclusions of law. To survive a challenge by demurrer, a pleading must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment. In other words, despite the liberality of presentation which the court will indulge, the motion must state a cause of action." *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122-23, 624 S.E.2d 1, 4 (2006) (internal quotation marks and citations omitted).

## B. *The Virginia Fraud Against Taxpayers Act*

The Virginia Fraud Against Taxpayers Act is codified as Virginia Code § 8.01-216.1 *et seq.* Section 8.01-216.3 governs the requirements for false claims. The only surviving claim by the Commonwealth falls under subsection (A)(2). That provision provides:

Any person who . . . (2) Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth . . . shall be liable to the Commonwealth for a civil penalty of not less than $ 5,500 and not more than $ 11,000, plus three times the amount of damages sustained by the Commonwealth.

Va. Code Ann. § 8.01-216.3(A) (2009). Because the Original Complaint in this action was filed in 2009, the pre-amendment version of the Virginia Fraud Against Taxpayers Act is the applicable statute.

All essential elements must be proved by a preponderance of the evidence. Va. Code Ann. § 8.01-216.9 (2009).

Section 8.01-216.2 of VFATA defines a "claim" as:

> Any request or demand, whether under a contract or otherwise, for money or property, regardless of whether the Commonwealth has title to the money or property, that (i) is presented to an officer, employee, or agent of the Commonwealth or (ii) is made to a contractor, grantee, or other recipient (a) if the money or property is to be spent or used on the Commonwealth's behalf or to advance a governmental program or interest and (b) if the Commonwealth provides or has provided any portion of the money or property requested or demanded or will reimburse such contractor, grantee, or other recipient for any portion of the money or property that is requested or demanded.

Va. Code Ann. § 8.01-216.2 (2009).

A court must look to the plain language of a statute in determining its meaning. "Once the legislature has acted, the role of the judiciary is the narrow one of determining what [the legislature] meant by the words it used in the statute." *Chapman v. Commonwealth*, 56 Va. App. 725, 732, 697 S.E.2d 20, 24 (2010); *see also Cuccinelli v. Rector & Visitors of Univ. of Va.*, 283 Va. 420, 421, 722 S.E.2d 626, 626 (2012) ("When the language of a statute is unambiguous, we are bound by the plain meaning of that language.") (internal quotation marks omitted).

By its plain language, (A)(2) requires both: (i) "a false record or statement"; *and* the use of that "to get a false or fraudulent claim paid or approved." The "false record or statement" and the "claim" are separate statutory terms that have separate meanings. *See United States, ex rel. Wilkins v. North Am. Constr. Corp.*, 173 F. Supp. 2d 601, 623 (S.D. Tex. 2001) (observing that "[t]he distinction between a false statement and a false claim is clearly made in the parallel federal provision"); *cf. Klarfeld v. Salsbury*, 233 Va. 277, 284-85, 355 S.E.2d 319, 323-24 (1987) ("When the General Assembly uses two different terms in the same act, it is presumed to mean two different things.") (internal quotation marks omitted). Therefore, the claim cannot in fact be subsumed into the record or statement as this Court previously ruled. Such is directly contrary to the plain language of the statute.

VFATA's definition of "claim" further supports the conclusion that accounting statements are not claims since they do not "request or demand . . . money or property." Va. Code Ann. § 8.01-216.2 (2009) ("Any request or demand, whether under a contract or otherwise, for money or property.

. . .”). The Commonwealth has even conceded that, "[u]pon execution of a standing-instruction trade, BNYM could not present a claim for payment. Instead, BNYM debited the Virginia Funds' accounts, presenting to the Commonwealth records and statements of those trades only after BNYM completed them." Hearing Trans. 30:5 (February 10, 2012). Although the accounting statements could amount to a "false record or statement," they are still distinct from a "false or fraudulent claim." Va. Code Ann. § 8.01-216.3(A)(2) (2009).

Moreover, in construing a parallel provision of the Federal False Claims Act ("FCA") the Supreme Court of the United States explained that "getting a false or fraudulent claim `paid . . . by the Government' is not the same as getting a false or fraudulent claim paid using `government funds.'. . . [A] defendant must intend that the Government itself pay the claim." *Allison Engine Co. v. United States, ex. rel Sanders*, 553 U.S. 662, 669, 128 S. Ct. 2123, 170 L. Ed. 2d 1030 (2008) (first ellipsis in original). A false statement triggers liability only if the defendant "intend[s] the Government to rely on that false statement as a condition of payment." *Id.* at 672.

As a result, liability cannot be triggered here because there is no request that the Commonwealth pay a false claim. The accounting statements submitted by BNYM to the Commonwealth do not request or demand money or property. Instead they are records or statements, which, even if fraudulent, are of past transactions. The Commonwealth cannot rely on these statements as a condition of payment when there is no request for payment by BNYM. The statute states otherwise.

Although the various cases relied on by the Commonwealth are informative, none of them actually addresses the specific language of the taxpayer fraud acts and what is required by the acts in order to fit with the language of such an act in order to complain of a violation of it. For example, in *Harrison v. Westinghouse Savannah River Co.*, the Relator, Harrison, brought a claim under the False Claims Act, 31 U.S.C. §§ 3729-3733 (West Supp. 1998), against Westinghouse Savannah River Company ("WSRC"). 176 F.3d 776 (4th Cir. 1999). The Relator alleged that WSRC "made false and fraudulent statements to the government in connection with *claims* for payment to a subcontractor. . . ." *Id.* at 780 (emphasis added). The court noted that "in order for a false statement to be actionable under the False Claims Act it must constitute a `false or fraudulent' claim. The statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the `claim for payment'." *Id.* at 785 (quoting *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995). Throughout its opinion, the court consistently and constantly acknowledges the requirement of a "claim" in order for liability to attach under the False Claims Act. *See id.* at 785, 786. Based on this, the court found that the submission of invoices for reimbursement constituted a "claim" under the False Claims Act. *Id.* at 792. That finding is distinguishable from this

case because BNYM did not submit invoices to the Commonwealth for reimbursement. BNYM only submitted accounting statements, none of which requested reimbursement.

*United States, ex rel. Frascella v. Oracle Corp.*, 751 F. Supp. 2d 842 (E.D. Va. 2010), is also plainly distinguishable. In fact, *Frascella* does not really address the requirement of a "claim" at all. In *Frascella* the federal government made allegations against Oracle under the False Claims Act. Specifically, the government claimed that "Oracle failed to disclose . . . the deep discounts that it offered to many of its commercial customers, thereby resulting in substantial overcharges to the government." *Id.* at 844. The Complaint in Intervention asserted two counts against the defendant based on the False Claims Act, specifically, a violation of 31 U.S.C. § 3729(a), and a violation of 31 U.S.C. § 3729(a)(1)(B). 31 U.S.C. § 3729(a) alone does not set forth a cause of action. It merely states: "Liability for certain acts." Its subparts are what actually set forth the various causes of action under the False Claims Act. Therefore, it is unclear what violation of the False Claim Act is actually alleged Count I of the Complaint in *Frascella*. 31 U.S.C. § 3729(a)(1)(B) attaches liability to "any person who . . . knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim. . . ." This provision is identical to the language in VFATA, Va. Code § 8.01-216.3(A)(2) ("knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim. . . .").

Although the language of 31 U.S.C. § 3729(a)(1)(B) of the False Claims Act and the language of § 8.01-216.2(A)(2) of VFATA are identical, the court in *Frascella* did not focus on the term "claim" in that provision of the False Claims Act. Instead the court focused on whether or not there was proof of a material false statement. *Frascella*, 751 F. Supp. 2d at 854. The Court found that "read as a whole, the United States' Complaint in Intervention alleges an ongoing, interrelated fraud involving *multiple false statements and omissions* during the performance of an Oracle contract. . . ." *Id.* at 855 (emphasis added). Even though the Court went on to say that these false statements and omissions lead to the "submission and payment of a number of false claims," there was no discussion as to what constituted a "claim" under the meaning of the False Claims Act. Yet, that is the central issue in this Motion for Reconsideration. *Id.*

Equally unpersuasive is *United States, ex rel. Howard v. Urban Investment Trust, Inc.*, 2007 U.S. Dist. LEXIS 76010 (N.D. Ill., Eastern Div. 2007), a case cited by the Relator. In that case, the court equates embezzlement with a false claim, which is faulty reasoning at best, but which, more importantly, bears no relationship to the facts of this case whatsoever. Furthermore, the court discusses the "reverse false claims provision" of the False Claims Act, 31 U.S.C. § 3729(a)(7) (West Supp. 1998), which is virtually identical to § 8.01-216.3(A)(7) of VFATA, and that provision is no

longer at issue here. The Commonwealth's Claim under § 8.01-216.3(A)(7) of VFATA was dismissed when BNYM's first demurrer was sustained. *See Commonwealth, ex rel. FX Analytics*, Case No.CL-2009-15377, Nov. 18, 2011, Order. The court notes that the United States Supreme Court has stated that " 'all fraudulent attempts to cause the Government to pay out sums of money' qualify as false claims under the FCA." *Howard v. Urban Investment Trust, Inc.*, 2007 U.S. Dist. LEXIS 76010, *7 (N.D. Ill., Eastern Div., 2007). However, that dicta is irrelevant to this case as there is no allegation that there was a fraudulent attempt to make the Commonwealth pay out money. The allegation is that BNYM made undisclosed profits based on the way it handled the FX transactions for the various Funds it managed.

Another case cited by the Commonwealth which lends no support to her argument is *United States, ex rel. Windsor v. DynCorp, Inc.*, 895 F. Supp. 844 (E.D. Va. 1995). The issue in *DynCorp* was whether alleged violations by DynCorp of the Davis-Bacon Act's[1] reporting and classification requirements constituted "false claims" under the False Claims Act. *DynCorp*, 895 F. Supp. at 846. Essentially the contract between DynCorp and the Army "subject[ed] DynCorp to the [Davis-Bacon] Act's wage and reporting requirements." *Id.* at 849. "The question . . . presented [there was] whether . . . violations of the Davis-Bacon Act, when coupled with DynCorp's continued request for, acceptance of, full contract payments by the Army, constitute[d] false claims against the government within the meaning of the False Claims Act." *Id.* The court stressed that the provisions of the FCA "make clear [that] not every false statement made to a government entity constitutes a 'false claim' under the Act. Rather, the claim must be one "for payment or approval." *Id.* at 850. Furthermore:

> only (i) "actions which have the purpose and effect of causing the government to pay out money" where it is not due, or (ii) actions which intentionally deprive the government of money it is lawfully owed, are considered "claims" within the meaning of the FCA.

*Id.* at 850 (citing *United States v. Board of Educ. of City of Union City*, 697 F. Supp. 167, 175 (D. N.J. 1988); *United States v. Douglas*, 626 F. Supp. 621 (E.D. Va. 1985)).

Clearly that case stands for exactly the opposite of what the Commonwealth argues here because the accounting statements are not "claims" as they did not cause the Commonwealth to pay out money where it was not due and because there is no allegation that the Commonwealth was deprived of money that was lawfully hers.

*United States v. McLeod*, 721 F.2d 282 (9th Cir. 1983), another case cited by the Relator, is completely off point. This case involves a claim by the

---

[1]    240 U.S.C. § 276a.

government against McLeod alleging that he had converted federal funds accidentally issued to him and was therefore liable for violations under the False Claims Act. *Id.* at 284. The court found that "the endorsement and deposit of a government check known to be issued by mistake is the presentation of a false claim under the [False Claims Act]." *Id.* That finding bears no relation to this case. There was no endorsement and deposit of a government check here. There was not even a check involved at all. Therefore, *McLeod* does not support the Commonwealth's argument that the accounting statements are "claims" under the language of VFATA.

Finally, even the Commentary cited by the Commonwealth, Claire M. Sylvia, *The False Claim Act: Fraud Against the Government*, §§ 4:2, 4:3, p. 117 (2d ed. 2010): "a statement or record is not required to establish a violation of section (a)(1)(A). A policy, practice, or course of conduct to fraudulently induce the Government to part with its money or property may violate subsection (a)(1)(A)," uses the permissive "may" in describing a practice which may be violative of a false claims act. Such an analysis is hardly persuasive.

In short, neither the authorities nor commentary relied on by the Commonwealth and the Relator support the contention that recovery under VFATA may be had absent the submission of a claim as that term is defined in the Act.

*Ex rel. FX Analytics, Los Angeles County Employee Retirement Ass'n, et al. v. Bank of New York Mellon Corp., et al., No. C 11-5683 WHA, 2012 U.S. Dist. LEXIS 45558, issued on March 30, 2012.*

BNYM also provided a Notice of Supplemental Authority to support its assertion that the Commonwealth has not stated a claim under Va. Code § 8.01-216.3(A)(2). Recently, in the United States District Court for the Northern District of California in *Ex rel. FX Analytics, Los Angeles County Employee Retirement Ass'n, et al. v. Bank of New York Mellon Corp., et al.,* ("*LACERA*") the District Court dismissed all causes of action brought under the California False Claims Act ("CFCA"), relating to BNYM's standing instruction services. The allegations in that Complaint and the language of the CFCA are strikingly similar to the language of VFATA and the facts and issues (and indeed some of the parties) as those presented here.

CFCA defines a claim in part as a "request or demand for money [or] property." Cal. Gov't Code § 12651(b)(1) (West 2009). And, like VFATA, CFCA prohibits the "mak[ing] [or] us[ing] . . . [of] a false record or statement to get a false claim paid or approved by" certain state governmental entities. *Id.* at (a)(2).

The Relator and certain California pension funds alleged in *LACERA* that BNYM:

knowingly used false pricing and false and fraudulent statements, including . . . monthly [accounting] reports, in order to profit from, and keep, the Plaintiffs' monies. These reports, omitting the fact and size of spreads taken by [BNYM] in contravention of its contractual and fiduciary duties to the Plaintiffs, were created by [BNYM] to get the Plaintiffs to approve the bank's false claims.

Third Am. Compl. ¶ 66, *LACERA* (filed Dec. 27, 2011).

These allegations are comparable, if not virtually identical, to those in the Commonwealth's Second Amended Complaint-in-Intervention. *Commonwealth, ex rel. FX Analytics v. Bank of New York Mellon*, Case No. CL-2009-15377, Second Am. Compl. ¶¶ 137-139.

In *LACERA*, the District Court held that those allegations were legally insufficient to allege a violation of CFCA and found that the periodic accounting statements were not "claims" within the meaning of CFCA. *Ex rel. FX Analytics, Los Angeles County Employee Retirement Ass'n, et al. v. Bank of New York Mellon Corp., et al.*, Case No. C 11-5683 WHA, 2012 U.S. Dist. LEXIS 45558 at *11, March 30, 2012. More specifically, the Court found that, "because this order has found . . . that no `claim' has been sufficiently alleged, there can be no liability under this subsection, which plainly requires a nexus between the false record and a false or fraudulent `claim'." *Id.* at 2012, U.S. Dist. LEXIS 45558 at *20-21.

In attempting to distinguish *LACERA*, the Commonwealth makes the point that approval of the records submitted could amount to approval of what amounted to a false claim. Section (A)(2), however, states unequivocally that the false record or statement must be used to get a false or fraudulent claim paid or approved. And the accounting records or statements in and of themselves do not amount to a claim as defined by VFATA. A "claim" is a "request or demand" for money. "Any request or demand, whether under a contract or otherwise, for money. . . ." Va. Code Ann. § 8.01-216.2 (2009). The accounting records are neither requests nor demands for money.

Because VFATA, like "CFCA[,] authorizes a civil penalty for a false `claim' but not for a `false record or statement' " standing alone,[2] there must be allegations that link any allegedly false record to a particular false or fraudulent claim. Here, there is no link between those two because the allegedly false accounting statements were not presented to the Commonwealth as a request or demand for money or property, which is required to state a claim under Virginia Code § 8.01-216.3(A)(2). The two prior rulings of this Court to the contrary were in error. A "claim" cannot be subsumed into a "record or statement" absent clear statutory authority to do so. None is present here.

The reasoning of *LACERA* is consistent with the holdings of the many cases submitted by BNYM in support of its Motion for Reconsideration and

---

[2] *Id.* at 7.

in support of its Demurrers. *See Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318 (11th Cir. 2009); *United States, ex rel. Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011); *Allison Engine Co. v. United States, ex rel. Sanders*, 553 U.S. 662, 128 S. Ct. 2123, 170 L. Ed. 2d 1030 (2008); *United States, ex rel. Clausen Laboratory Corp. of Am.*, 290 F.3d 1301 (11th Cir. 2002).

## Conclusion

The Commonwealth and Relator are both correct that Motions to Reconsider are not favored and should be rarely granted absent new evidence, manifest injustice, or clear error. Notwithstanding, and despite the fact that the Court has considered this issue very carefully on at least two prior occasions, the decision as to the applicability of § 8.01-216.3(A)(2) falls on either side of a line that I have described as razor thin. As a result, the Supplemental Authority submitted on behalf of BNYM prompted me to fully reconsider my earlier decisions in order to avoid if not clear error, error nonetheless.

The error in the Court's original rulings stemmed from the mistaken supposition that the "record or statement" language of § 8.01-216.3(A)(2) must be there for a reason, namely, to address the type of situation alleged here, one in which no formal "claim" is actually submitted but one in which a fraud is nonetheless perpetrated against the government. It seemed to the Court that this type of alleged fraud, namely, one fully disguised and perpetrated over time because the alleged wrongdoer was paying itself from the funds which it administered as opposed to submitting an invoice, bill, or other claim for payment, must have been the target of the "false record or statement" provision. Notwithstanding, the plain language of that section requires that a "claim" be submitted as well. Because that did not occur, any redress sought on behalf of the Virginia Funds will have to come by an avenue other than VFATA.

Put differently, if BNYM did what is alleged, namely, falsifying records in order to mask improper fees (and to permit it to pay itself from the funds which it was holding), then that might be shown to provide other potential causes of action against BNYM, for example, a breach of its contracts or the commission of a fraud against the Funds. But, the VFATA, by its own words, requires that such fraudulent actions, through a false record or statement as contained in § 8.01-216.3(A)(2), must also result in the submission of a claim for payment. In other words, although the intention of § 8.01-216.3(A)(2) may seem clear, the procedure for ultimately running afoul of the Act is still inextricably linked to the term "claim." The Court cannot rewrite the VFATA in order to have it comport with what the Court believed the Act may be trying to address.

For these reasons, the Motion for Reconsideration is granted. The Demurrer is sustained, and the remaining claim under VFATA, § 8.01-216.3(A)(2), is dismissed.

Because there are no other claims asserted in the Complaint beyond VFATA, absent a Motion to Amend, the dismissal of this final remaining claim requires a dismissal of the Complaint in its entirety.