# CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

v.

ProNurses *et al.*

September 24, 2015

Case No. CL14-1692

BY JUDGE JOHN F. DAFFRON

The Parties came, by counsel, before this Court on May 26 and 28, 2015, for a bench trial in this matter. After the Parties presented all evidence and arguments, the Court ordered the Parties to submit post-trial briefs. The Court received a brief from the Commonwealth but did not from any Defendant. Accordingly, this Court makes its ruling based on the evidence presented at trial, the Commonwealth's post-trial brief, and Defendants' closing argument at trial.

## Facts

The Commonwealth claims that Defendants, *i.e.* ProNurses and Valerie Bester, submitted 236 fraudulent invoices to the Commonwealth and/ or its agencies for payment under a contract. *See* Trial Tr., vol. 1, 4:4-16, May 26, 2015. The Commonwealth presented testimony from Christine Nichols, a contract administrator for the Commonwealth's Department of General Services ("DOS"). *See* Trial Tr., vol. 1, 11:20-12:19. Through Ms. Nichols, the Commonwealth entered into evidence the contract between the Commonwealth and ProNurses. *See* Trial Tr., vol. 1, 16:3-10. The contract dictates that ProNurses is entitled to payment from the Commonwealth equal to what ProNurses paid its employees plus 10%. *See* Plaintiff's Ex. 5. Ms. Nichols testified that Defendants submitted 236 invoices which requested payment of more than what ProNurses paid its employees plus 10%. *See* Trial Tr., vol. 1, 32:15-34:10; Plaintiff's Ex. 6 & 7. Ms. Nichols

concluded at the end of her testimony that ProNurses had overbilled the Commonwealth by $147,206.92. Trial Tr., 49:16-50:6.

Ms. Nichols then testified regarding several monthly detailed usage reports ("MDURs"). *See* Trial Tr., vol. 1, 35:9-14. These reports gathered the total time ProNurses' employees worked for the Commonwealth and its agencies and also how much Defendants billed for these employees. *See* Trial Tr., vol. 1, 39:16-40:5. Defendants would then have to pay the Commonwealth's DOS 2% of the value billed as a surcharge. *See* Trial Tr., vol. 1, 40:2-3. On several occasions, Defendants would report that they billed the using agencies less than what was actually billed. Trial Tr., vol. 1, 41:21-43:19. This had the effect of reducing the amount ProNurses owed the Commonwealth for this surcharge. Trial Tr., vol. 1, 43:1-19.

The Commonwealth then called Julie Whitlock, a DGS employee, to read in portions of Valerie Bester's deposition. In her deposition, Ms. Bester testified that she took over ProNurses in March 2010. *See* Trial Tr., vol. 1, 104:15-23. Around this time, March 2010, Ms. Bester had access to ProNurses' contract with the Commonwealth and reviewed it. *See* Trial Tr., vol. 1, 105:1-9. Ms. Bester then testified that she personally submitted one or two of the invoices for payment and the rest were done by another employee with Ms. Bester reviewing. *See* Trial Tr., vol. 1, 106:11-107:4.

*Analysis*

A. *The Court Finds Defendants Liable on Each of Plaintiff's Four Claims*

1. *Defendants Are Liable on Commonwealth's First Claim for Violation of Va. Code Ann. § 8.01-216.3(A)(1)*

The Commonwealth's first claim against Defendants is for violations of Va. Code § 8.01-216.3(A)(1). This section of the Virginia Fraud Against Taxpayers Act ("VFATA") states:

> [a]ny person who . . . [k]nowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval . . . shall be liable to the Commonwealth for a civil penalty of not less than $5,500 and not more than $11,000, plus three times the amount of damages sustained by the Commonwealth.

Va. Code Ann. § 8.01-216.3(A)(1) (2015). The statute further defines "knowingly" as having actual knowledge of the information, acting in deliberate ignorance of the truth or falsity of the information, or acting in reckless disregard of the truth or falsity of the information. *See id.* at 8.01-216.3(C). No proof of specific intent to defraud is required to be liable for a violation. *See id.*

The Commonwealth argues in its brief that 236 invoices submitted by Defendants constitute false claims under the statute. The Commonwealth points out that invoices for reimbursement do count as claims for the purpose of the VFATA. Pl.'s Br. Post Tr. 7 (citing *Commonwealth, ex rel. FX Analytics v. Bank of N.Y. Mellon*, 84 Va. Cir. 473, 478 (Fairfax County 2012)). The Commonwealth further argues that Ms. Bester knew the invoices were false claims because she was in charge of the various elements that went into creating the invoices. Pl.'s Br. Post Tr. 8. Specifically, the Commonwealth argues Ms. Bester had access to the contract and knew the correct charge was what ProNurses paid its employees plus 10%, she was responsible for the ProNurses payroll, and she was responsible for creating or reviewing the invoices sent to the Commonwealth. Pl.'s Br. Post Tr. 8. From these facts, the Commonwealth asserts that Ms. Bester, and ProNurses vicariously, are liable for violating Va. Code § 8.01-216.3(A)(1).

In their closing argument, Defendants argue that the invoices were the result of mistakes. *See* Trial Tr., vol. 2, 159:19-25, May 28, 2015. Defendants claim that this does not raise to the level a fraud because Defendants never intended to defraud the Commonwealth.

Defendants also argue they never made any false claims. *See* Trial Tr., vol. 2, 156:6-7. Defendants assert they simply billed the Commonwealth and its agencies what those agencies asked them to bill. *See* Trial Tr., vol. 2, 156:14-158-5. The invoices did not contain statements of what Defendants paid employees, just what they billed the government. *See* Trial Tr., vol. 2, 156:14-158-5. Defendants claimed these do not constitute false claims in violation of the VFATA.

Defendants finally argue that that Ms. Bester could not be found liable for a VFATA violation simply because she was an officer of the corporation at the time of the alleged fraud. *See* Trial Tr., vol. 2, 160:12-161:3. Defendants rely on a federal case concerning the federal equivalent of the VFATA, the False Claims Act. This opinion holds that the CEO of a company alleged to have defrauded the federal government could not be liable simply because that person was an officer; more facts than that are necessary. *United States, ex rel. DeCesare v. Americare In Home Nursing*, 757 F. Supp. 2d 573, 587 (E.D. Va. 2010). The Americare court dismissed the CEO in that case because the complaint did not allege sufficient facts to show the CEO had knowledge of the fraudulent activity. *See id.*

The Court does not find compelling Defendants' argument that they made no false claim by billing state agencies what those agencies offered to pay for Defendants' services. The contract between the Commonwealth and ProNurses explicitly states the allowable charge is employee payment plus 10%. The false claim is not found in statement on the invoices; the falsity is contained in Defendants' making a claim against the Commonwealth to which they knew they were not entitled. Defendants' assertions that they never made a false claim ignore the fact that failing to disclose a material

fact that it knows is unknown to the other party may constitute fraud. *Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 368, 585 S.E.2d 578 (2003). Here, Defendants failed to inform Commonwealth agencies that the pay rate the agencies requested was in excess of what was allowed under contract. This failure to disclose constitutes fraud for which Defendants will be held liable.

Furthermore, Ms. Bester had the requisite mental state to violate the statute. The facts show that Ms. Bester created or reviewed all invoices and oversaw ProNurses' payroll. Ms. Bester also testified that she reviewed the contract. This proves she had actual knowledge of what ProNurses was billing the Commonwealth, what ProNurses was paying its employees, and what was allowed under the contract. If Ms. Bester did not have actual knowledge (although the facts support that she did), she certainly had the means of discovering the problem. Under the statute, knowledge may be imputed where deliberate ignorance of or reckless disregard for the truth is present. Ms. Bester had all the necessary materials to discover the overbilling; the fact that she continually overbilled shows deliberate ignorance or reckless disregard at least.

Therefore, this Court finds by a preponderance of the evidence that Defendants knowingly presented 236 false claims for payment in violation of Va. Code § 8.01-216.3(A)(1).

### 2. *Defendants Are Liable on Commonwealth's Second Claim for Violation of Va. Code Ann. § 8.01-216.3(A)(2)*

The Commonwealth's second claim against Defendants is for violations of Va. Code § 8.01-216.3(A)(2). This section of the VFATA states:

> [a]ny person who . . . [k]nowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . shall be liable to the Commonwealth for a civil penalty of not less than $5,500 and not more than $11,000, plus three times the amount of damages sustained by the Commonwealth.

Va. Code Ann. § 8.01-216.3(A)(2). This section has the same mental state requirements as those mentioned for Count 1. *See id.* at 8.01-216.3(C).

The Commonwealth argues in its brief that Defendants made false statements material to a false claim by using pay rates on the invoices not in accord with the contract. Pl.'s Br. Post Tr. 4. These invoices contain pay rates Defendants billed to the Commonwealth that did not coincide with the cost plus 10%. Pl.'s Br. Post Tr. 4. The Commonwealth further argues these statements are material because the alleged fraudulent rate was the basis for calculating the amount the Commonwealth owed on the invoice.

Pl.'s Br. Post Tr. 4. As to Defendants' knowledge of the false statements, the Commonwealth makes an identical argument to that made for Count 1.

Defendants argue in their closing statement that they cannot be held liable for violation of Va. Code § 8.01-216.3(A)(2) for various reasons. The first argument is that the Commonwealth had not satisfied the "double falsity" requirement to prove a violation of this statute. *See* Trial Tr., vol. 2, 154:8-17. Defendants rely on language from *Bank of New York Mellon* stating that a false claim cannot be subsumed in a false statement. 84 Va. Cir. at 477. Defendants also argued that there was no false statement for the same reason there was no false claim, as explained previously regarding Count 1. *See* Trial Tr., vol. 2, 156:14-158-5.

Defendants' reliance on *Bank of New York Mellon* is misplaced because that case considers a different factual scenario. *Bank of New York Mellon* concerned a situation where there was no false claim because the alleged false claim came after the defendant had obtained government money. 84 Va. Cir. at 477. The *Bank of New York Mellon* court held that a false claim could not be subsumed in the false statement alleged there, because no false claim even existed. *Id.* The case at bar concerns the opposite. The situation in this case is different. Defendants did make a claim on the government in the form of the invoices. This is different from *Bank of New York Mellon*, where the court found no claim, because the accounting was of money already debited from government accounts. Defendants' alleged false statement here was made in support of an actual claim for payment, not in an accounting. This distinguishes the present case from *Bank of New York Mellon* and makes Defendants' "double falsity" argument irrelevant.

Additionally, the Defendants knowingly made these statements for the same reasons stated under Count 1. These statements were also material to a false claim in that the false claim was based directly on the fraudulent pay rates which constitute the false statements.

Therefore, this Court finds by a preponderance of the evidence that Defendants knowingly made 236 false statements material to false claims in violation of Va. Code § 8.01-216.3(A)(2).

*3. Defendants Are Liable on Commonwealth's Third Claim for Violation of Va. Code Ann. § 8.01-216.3(A)(7)*

The Commonwealth's third claim against the Defendants is for violations of Va. Code § 8.01-216.3(A)(7). This section of the VFATA states:

> [a]ny person who . . . [k]nowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Commonwealth . . . shall be liable to the Commonwealth for a civil penalty of not less than $5,500 and not more than

> $11,000, plus three times the amount of damages sustained by
> the Commonwealth.

Va. Code Ann. § 8.01-216.3(A)(7). This section has the same mental state requirements as those mentioned for Counts 1 and 2. *See id.* at § 8.01-216.3(C).

The Commonwealth argues in its post-trial brief that Defendants' underreporting in the MDURs constitutes a violation of Va. Code § 8.01-216.3(A)(7). This argument is based on Defendants' billing using agencies a greater amount than what was reported on the MDURs. Pl.'s Br. Post Tr. 9. The result was that ProNurses paid less to DGS than it should have for the 2% surcharge fee. Pl.'s Br. Post Tr. 9-10. The Commonwealth argues that this different number reported on the MDURs is a false statement material to an obligation to pay money to the Commonwealth, thus, in violation of the statute. The Commonwealth also relies on the same facts as in Counts 1 and 2 regarding Defendants' knowledge of the underreporting. Pl.'s Br. Post Tr. 8-9. Ms. Bester was aware of the 2% surcharge in the contract and either prepared or reviewed the MDURs. Pl.'s Br. Post Tr. 10.

Defendants made no closing argument addressing the underreported MDURs. *See* Trial Tr., vol. 2, 154:6-166:7. The only mention of the MDURs is in the context of Ms. Bester's knowledge of the alleged fraud. Trial Tr., vol. 2, 154:16-155:6. The Court can assume that Defendants also challenge Ms. Bester's knowledge of the underreported MDURs based on the same argument put forth regarding knowledge in Counts 1 and 2.

The evidence shows Defendants submitted MDURs to DGS which falsely stated what Defendants had billed using agencies. Ms. Bester either prepared or reviewed these MDURs and was aware of the appropriate reporting procedure in the contract. This imputes knowledge to both Ms. Bester and ProNurses. These underreported MDURs contained false statements and allowed Defendants to decrease the amount ProNurses owed under the 2% surcharge, violating § 8.01-216.3(A)(7).

Therefore, this Court finds by a preponderance of the evidence that Defendants knowingly made eleven false statements material to an obligation to pay money to the Commonwealth in violation of Va. Code § 8.01-216.3(A)(7).

*4. Defendants Are Liable on Commonwealth's Fourth Claim for Breach of Contract*

A breach of contract claim has three elements: a legally enforceable agreement between plaintiff and defendant; a breach of that agreement by defendant; and injury or damage to the plaintiff caused by the breach. *See Ulloa v. QSP, Inc.*, 271 Va. 72, 79, 624 S.E.2d 43 (2006).

The Commonwealth argues that Defendants breached the contract by submitting invoices for payment in excess of the contract's allowable rate

and also for underreporting costs on the MDURs. The Commonwealth supports the existence of a legally enforceable contract by Defendants' own admission. Pl.'s Br. Post Tr. 12. The contract explicitly stated that Defendants were entitled to payment from using agencies based on what ProNurses paid its employees plus 10%. Pl.'s Br. Post Tr. 13. When Defendants submitted the 236 invoices for payment in excess of this, the Commonwealth claims this breached the contract. Pl.'s Br. Post Tr. 13. The contract also required Defendants to report to DGS the total billing to using agencies. Defendants would then pay DGS a 2% surcharge fee based on this amount. Pl.'s Br. Post Tr. 13. The Commonwealth claims Defendants underreported this total billing on several occasions, which led to decreased payments to DGS. Pl.'s Br. Post Tr. 13. The Commonwealth argues this also constitutes a breach. Finally, the Commonwealth claims that it was damaged in the amount using agencies overpaid based on the invoices and in the amount Defendants underpaid based on the MDURs. Pl.'s Br. Post Tr. 14. Had Defendants not overbilled in the invoices and underreported in the MDURs, the Commonwealth would not have overpaid and undercharged Defendants.

Defendants' arguments do not refute the existence of a legal obligation or a breach. *See* Trial Tr., vol. 2, 154:6-166:7. The only contention with the breach of contract claim relates to damages. *See* Trial Tr., vol. 2, 164:8-166:7. Defendants first argue that the Commonwealth did not prove damages because it failed to show that it paid the invoices. *See* Trial Tr., vol. 2, 164:8-16. Furthermore, Defendants assert the Commonwealth was actually never damaged. *See* Trial Tr., vol. 2, 165:12-16. The Commonwealth, according to Defendants, got what it bargained for when it paid Defendants what the using agencies agreed to pay. *See* Trial Tr., vol. 2, 165:16-166:4.

Defendants admitted there was a legally enforceable agreement. That agreement entitled Defendants to payment for only what they paid employees plus 10%. Evidence shows that Defendants submitted invoices for payment well beyond what they paid employees plus the markup. This constitutes a breach of the contract between the Commonwealth and ProNurses. Additionally, the agreement required Defendants to report the amount they billed using agencies and pay DGS 2% of that total. Defendants underreported this total on several occasions. This also constitutes a breach. The result of these breaches was that ProNurses obtained payment in excess of that to which it was entitled and paid less than it should have under the surcharge. These breaches were a direct cause of the Commonwealth's injury, specifically a loss of money.

The Court considers the Commonwealth's argument about presumption of damages compelling. Defendants argue the Commonwealth never proved it paid the invoices. However, state agencies are presumed to discharge all functions correctly which includes prompt payment for services rendered by private enterprises. *See Hladys v. Commonwealth,* 235 Va. 145, 148,

366 S.E.2d 98 (1988); Va. Code Ann. § 2.2-4350 (2014). This presumption is rebuttable but, as in *Hladys*, no rebutting evidence was offered by Defendants. *See* 235 Va. at 148. This presumption and lack of rebuttal by Defendants is sufficient to prove damages.

On the contrary, the Court does not adhere to Defendants' argument that the Commonwealth was not actually damaged. According to the contract, ProNurses was only entitled to payment from the Commonwealth for what ProNurses paid its employees plus 10%. The invoices submitted by Defendants exceeded that and resulted in using agencies paying more to ProNurses than they should have. Hence, Defendants breached the contract and damaged the Commonwealth.

This Court finds that there was a legally enforceable agreement between the Commonwealth and ProNurses, that ProNurses breached that contract, and the Commonwealth incurred damages as a result of the breach.

B. *The Court Finds Defendants Liable to the Commonwealth for Certain Damages, Penalties, and Costs*

1. *Defendants Are Liable for Treble Damages for Violations of the VFATA*

Under the VFATA, violators shall be liable to the Commonwealth for three times the damages incurred from the violation. Va. Code Ann. § 8.01-216.3(A).

Counts 1 and 2 of Commonwealth's case alleged violations of the VFATA. This entitles the Commonwealth to recover triple the damages incurred from the violations. The Commonwealth proved it incurred damages of $147,206.92 for violations under Counts 1 and 2. This multiplies to $441,620.76 in treble damages. The damages resulting from the violations of Counts 1 and 2 stem from the same fraudulent activity. It is settled in Virginia that there can only be one recovery of damages for a single wrong. *Cox v. Geary*, 271 Va. 141, 147, 624 S.E.2d 16 (2006). Awarding the Commonwealth separate damages under Counts 1 and 2 would result in double recovery on the same wrong; so this Court will merge damages for these counts into a single award. Thus, this Court hereby finds the Defendants jointly and severally liable to the Commonwealth for $441,620.76.

Count 3 of Commonwealth's case alleged separate violations of the VFATA from Counts 1 and 2. Again, violations of the VFATA render violators liable to the Commonwealth for treble damages. The Commonwealth proved it incurred damages of $3,587.00, which triples to $10,761.00. This Court hereby finds the Defendants jointly and severally liable to the Commonwealth for $10,761.00.

*2. Defendants Are Liable for Civil Penalties for Violations of the VFATA*

Violations of the VFATA also carry civil penalties of $5,500 to $11,000 per violation. Va. Code Ann. § 8.01-216.3(A).

Count 1 of the Commonwealth's case alleges violations of VFATA. In particular, the Commonwealth proved 236 separate violations of § 8.01-216.3(A)(1) based on the invoices Defendants sent to using agencies. Multiplying the penalty range by the number of violations results in possible civil penalties of $1,298,000 to $2,596,000. This Court finds the Defendants jointly and severally liable for $1,298,000 in civil penalties.

Count 2 of the Commonwealth's case alleges violations of VFATA. In particular, the Commonwealth proved 236 separate violations of § 8.01-216.3(A)(2) based on the invoices Defendants sent to using agencies. Multiplying the penalty range by the number of violations results in possible civil penalties of $1,298,000 to $2,596,000. This Court finds the Defendants jointly and severally liable for $1,298,000 in civil penalties.

Count 3 of the Commonwealth's case alleges violations of VFATA. In particular, the Commonwealth proved eleven separate violations of § 8.01-216.3(A)(1) based on the invoices Defendants sent to using agencies. Multiplying the penalty range by the number of violations results in possible civil penalties of $60,500 to $121,000. This Court finds the Defendants jointly and severally liable for $60,500 in civil penalties.

*3. Defendants Are Not Liable for Damages for Breach of Contract*

Count 4 of the Commonwealth's case alleges a breach of contract with resulting damages. The damages stemming from this breach are a result of the fraudulent invoices submitted by Defendants and paid by Commonwealth and also the underreported MDURs. These damages are the same as those awarded for Counts 1 to 3. Again, there can only be one recovery of damages for a single wrong. 271 Va. at 147. Awarding the Commonwealth damages for this breach of contract claim would result in double recovery of damages for the same wrong. Therefore, this Court denies Plaintiff's prayer for damages under Count 4.

*4. Defendants Are Liable for the Commonwealth's Fees and Costs*

The VFATA further subjects violators to liability for reasonable attorney's fees and litigation costs resulting from the Commonwealth's civil action to recover for violations. Va. Code. Ann. § 8.01-216.3(A). The Commonwealth proved that it incurred $21,444.75 in attorney's fees and $2,146.35 in costs to bring this action, totaling $23,591.10. Therefore, the Court finds Defendants jointly and severally liable for $23,591.10.